**WO**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

James Paul Antonio,

          Movant/Defendant,

v.

United States of America,

          Respondent/Plaintiff.

No. CV-16-00341-TUC-CKJ
CR-06-02089-CKJ-BPV-1

**ORDER**

Before the Court is Movant/Defendant James Paul Antonio's Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255.  (Habeas Petition (Doc. 1)[1]  For the reasons that follow, the motion is denied, judgment is entered, and this case is closed. A certificate of appealability shall issue. The sentence imposed by the Court in 2008 on Count 3 is not unconstitutional, and Antonio is not entitled to resentencing.

**BACKGROUND**

On May 15, 2008, a jury convicted Antonio of six felony offenses, including Count 1, assault with a machine gun resulting in serious bodily injury in violation of 18 U.S.C. §§ 113(a)(6) and 1153; Count 2, assault with a dangerous weapon with intent to do bodily harm in violation of 18 U.S.C. §§ 113(a)(3) and 1153, and Count 3, possession and use of a deadly weapon during a crime of violence in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii), 924(c)(1)(B)(ii), and 924(c)(1)(C)(ii).[2]  The Second Superseding Indictment (SSI) (CR

---

[1] Citations using "Doc." refer to the docket in civil case #16-cv-341-TUC-CKJ. Citations using "CR Doc." refer to the docket in underlying criminal case #06-cr-2089-CKJ-BPV-

[2] Section 924(c)(1) provides in relevant part for "any person who, during and in relation to

Doc. 20) identified the assault charges in Count 1 and 2 as predicate offenses to the crime of violence charge.[3]

On December 29, 2017, the Court sentenced Antonio to concurrent ten-year sentences to imprisonment followed by three years of supervised release on Counts 1, 2, 4, 5, and 6, and thirty-years in prison followed by five years of supervised release for possession and use of a deadly weapon during a crime of violence (Count 3) to run consecutive to the ten-year sentences. The thirty-year consecutive sentence was because Antonio used a machine gun instead of a hand gun to commit his crimes.[4]

On June 10, 2016, Antonio filed his Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255, arguing that after the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015) his assault convictions no longer qualify as predicate crimes of violence under 18 U.S.C. § 924(c) and that the Court should vacate his thirty-year sentence.  (Habeas Petition (Doc. 1) at 1.)

18 U.S.C. § 924(c)(1)(A) punishes the use, carrying, or possession of a firearm "during and in relation to any *crime of violence* or drug trafficking crime" and other felony-assault charges not at issue here. The term "crime of violence" is defined in two ways in 18 U.S.C. § 924(c)(3). In subsection A, known as the elements clause, a felony qualifies as a crime of violence if it "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." *Id*. § 924(c)(3)(A). Under the so-called residual clause, subsection B, a felony qualifies as a crime of violence if it is an offense "that by its nature, involves a substantial risk that physical force against the person

---

any crime of violence or drug trafficking crime . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm" to be sentenced to an additional punishment of "not less than 5 years" for "such crime of violence or drug trafficking crime."
[3] The other three counts are not relevant to this habeas action, and were as follows: Count 4, possession of ammunition by a prohibited possessor; Count 5, possession of an unregistered firearm, and Count 6, unlawful possession of a machine gun. (CR Doc. 20)
[4] 18 U.S.C. § 924(c)(1)(B)(ii) states, "If the firearm possessed by a person convicted of a violation of this subsection … is a machinegun … the person shall be sentenced to a term of imprisonment of not less than 30 years." Had he used a standard handgun, he would have been subject to a mandatory minimum consecutive sentence of ten years instead of thirty.

or property of another may be used in the course of committing the offense." *Id.* § 924(c)(3)(B).

In *Johnson,* the Court found a similarly worded residual clause in § 924(e),[5] which provides enhanced sentences where there are prior violent felony convictions, to be unconstitutionally vague.

## PROCEDURAL HISTORY

On December 31, 2008, just days after sentencing, Antonio appealed his conviction to the United States Court of Appeals for the Ninth Circuit.  (CR Doc. 86.) On appeal, Antonio argued that this Court erred by (i) denying his motion to suppress the search of his backpack; (ii) denying his motion to preclude prior act testimony; (iii) denying his motion for mistrial; and (iv) permitting his wife to speak at sentencing. On July 8, 2010, the Ninth Circuit affirmed his conviction, *see United States v. Antonio*, 386 F. App'x 678 (9th Cir. 2010); and on October 6, 2010, Antonio's conviction became final, *see Clay v. United States*, 537 U.S. 522, 525 (2003) ("[A] judgment of conviction becomes final when the time expires for filing a petition for certiorari contesting the appellate court's affirmation of the conviction."); *United States v. Garcia*, 210 F.3d 1058, 1059 (9th Cir. 2000) (ruling that a § 2255 petitioner has "90 days after entry of the court of appeals' judgment" to file a writ for certiorari.).

Antonio filed the June 10, 2016, habeas motion pursuant to 28 U.S.C. § 2255 nearly six years after his conviction became final. On June 26, 2017, the Court denied his motion and dismissed his claims with prejudice, ruling that *Johnson* was inapplicable to his sentencing pursuant to 18 U.S.C. § 924(c)(3). The Court limited *Johnson* to 18 U.S.C. 924(e)(1) sentencings, distinguishing its definition for "violent felony" from the § 924(c)

---

[5] 18 U.S.C.A. § 924(e)(1) provides in relevant part that a felon in possession of a firearm, who has "three previous convictions for a violent felony or a serious drug offense, or both," committed on different occasions from one another, to be "imprisoned not less than fifteen years." "Violent felony" means any crime punishable by imprisonment for a term exceeding one year that-- has as an element the use, attempted use, or threatened use of physical force against the person of another; . . .." 18 U.S.C. § 924(e)(2)(B)(i).

definition for "crime of violence." (Order (Doc. 12) at 5-6.) The Court concluded that because *Johnson* did not apply, Antonio's habeas petition was barred by the one-year statute of limitation period for habeas review under the Antiterrorism and Effective Death Penalty Act of 1996 (ADEA). *Id.* at 9-10. The Court denied the Petition, entered Judgment, and closed the case. *Id.*

Antonio appealed. During the pendency of the appeal, the Supreme Court struck down the residual clause provision in the definition for "crime of violence" in 18 U.S.C. § 924(c)(3)(B). *United States v. Davis,* 139 S. Ct. 2319 (2019). As a result, the parties agreed to remand of the case, vacatur of the Court's Order and Judgement denying habeas relief, and for further proceedings. (Mandate/Decision (Doc. 19)). On remand, the Respondent/Plaintiff, the United States of America (the Government) no longer asserts a statute of limitations defense.

Since the remand, this Court has twice requested supplemental briefing, (Orders (Docs. 20, 32)), with the supplemental briefing intersected by an additional eighteen-month stay, (Order (Doc. 27)) during which time, the Supreme Court in *Borden v. United States,* 141 S.Ct. 1817 (2021) sorted out the definition of a "violent felony" as used in ACCA to enhance sentencing for felons in possession of a gun, who have more than three violent felony convictions. Sec. 924e (2)(B)(i). Relying on *Leocal v. Ashcroft*, 543 U.S. 1, 125 S.Ct. 377, 160 L.Ed.2d 271 (2004), which considered "a statutory definition relevantly identical to ACCA's elements clause," for a "crime of violence, codified at 18 U.S.C. § 16(a), "which appears in many federal criminal and immigration laws." The Court concluded that the definition, "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another," requires a *mens rea* beyond recklessness. For example, the "critical aspect" of 18 U.S.C. § 16(a) is the requirement that the perpetrator use physical force "against the person or property of another." The Court explained that the "key phrase ... most naturally suggests a higher degree of intent than negligent" conduct," such as purposeful conduct pointedly directed against the person or

property of another. Such a definition eliminates negligent offenses or those requiring only a *mens rea* of recklessness.

The parties agree that under *Borden,* one of the predicate assaults, Count 1: the assault resulting in serious bodily injury in violation of 18 U.S.C. § 113(a)(6), cannot be a crime of violence because it can be committed recklessly and is indivisible with respect to *mens rea.* With the § 924(c)(3)(B) residual clause definition for crime of violence invalidated as unconstitutionally vague, the issue that remains is whether the conviction on Count 2, assault with a dangerous weapon with intent to do bodily harm in violation of 18 U.S.C. §§ 113(a)(3) supports the sentence imposed for Count 3 for possession and use of a deadly weapon during a crime of violence in violation of 18 U.S.C. §§ 924(c).

In the original habeas motion, Antonio asserted that both predicate offenses failed because neither categorically met the definition of a crime of violence under *Johnson*, which invalidated the residual clause definition for crime of violence. After *Borden,* it is clear that Antonio was right in this assertion related to the predicate offense charge in Count 1, 18 U.S.C. § 113(a)(6), for assault resulting in serious bodily injury. This argument fails for the predicate offense assault with a deadly weapon, charged in Count 2 under 18 U.S.C. 113(a)(3). In the Ninth Circuit, an assault with a dangerous weapon qualifies as a crime of violence. As Antonio admits, in *United States v. Juvenile Female*, 566 F.3d 943 (9th Cir. 2009), the court held that assault on a federal officer with a dangerous weapon under 18 U.S.C. § 111(b) qualifies as a crime of violence under the 18 U.S.C. § 16(a) elements clause. "A defendant charged with ... assault with a deadly or a dangerous weapon, must have always 'threatened [the] use of physical force,' [] because he or she will have either made a 'willful attempt to inflict injury' or a 'threat to inflict injury,' with an object that 'may endanger the life of or inflict great bodily harm on a person.'" *Id.* at 948 (citing *United States v. Sanchez*, 914 F.2d 1355, 1358 (9th Cir. 1990)). The § 16(a) elements clause is identical, in all material and relevant respects, to the elements clause of § 924(c).

The Court rejects Antonio's argument that Ninth Circuit law is inconsistent with *Johnson v. United States* (*D. Johnson*), 559 U.S. 133, 140 (2010) where the Court held that

"physical force" means "force capable of causing physical pain or injury to another person." To the contrary, *D. Johnson*[6] reinforces, rather than undercuts, the reasoning of *Juvenile Female*. *Compare*: *Juvenile Female* (injury inflicted using object that may endanger the life of or inflict great bodily harm on a person) *with D. Johnson* (force capable of causing physical pain or injury). The Court rejects Antonio's assertion that there may be indirect or non-physically violent methods of committing an assault with a dangerous weapon. The Supreme Court has rejected the argument that the indirect use of physical force, such as in the example of sprinkling a poison on food to injure another, is not a use of physical force. *United States v. Castleman*, 134 S. Ct. 1405, 1409 (2014). *See also* (Habeas Petition (Doc. 1) at 8-11.)

The decision in *Juvenile Female* remains binding in the Ninth Circuit and on this court. In *United States v. Gobert*, 943 F.3d 878, 882 (9th Cir. 2019), the court answered the sole question relevant here: "whether the offense of assault with a dangerous weapon described in 18 U.S.C. § 113(a)(3) is a crime of violence under 18 U.S.C. § 924(c)(3)(A)." It concluded it is. *Id.*

In the original habeas motion, Antonio's theory of relief was that there was no qualifying crime-of-violence predicate, therefore, the Court lacked jurisdiction to enter the 30-year sentence under § 924(c)(1). (Habeas Petition (Doc. 1) at 12.) The 30-year sentence was, therefore, not authorized under federal law and constitutes a fundamental miscarriage of justice, *id.* (omitting citations). Accordingly, Antonio requests habeas relief under 28 U.S.C. § 2255.

The Government countered it did not matter because both predicates fit under the elements clause, 18 U.S.C. § 924(c)(1)(A), of the definition for a crime of violence. After *Borden,* it is clear that the Government was wrong in this assertion related to the predicate offense charge under Count 1, 18 U.S.C. § 113(a)(6), for assault resulting in seriously bodily injury. The Government's argument remains that the predicate offense of assault

---

[6] This case is not historically related to *Johnson v. United States,* 135 S.Ct 2551 (2015). The two cases simply share a common name.

with a deadly weapon, charged in Count 2 under 18 U.S.C. 113(a)(3) supports the conviction and 30-year sentence for a crime of violence under 18 U.S.C. §§ 924(c).

On remand, Antonio argues: "'Where a provision of the Constitution forbids conviction on a particular ground, the constitutional guarantee is violated by a general verdict that may have rested on that ground.'" (Movant's Supp. Brief (Doc. 21) at 2.) He argues that here there was a general verdict given for Count 3, which opens the door to the question: whether "[t]he jury convicted Antonio of, *inter alia*, Count 3's offense of discharging a machinegun during a 'crime of violence,' in violation of 18 U.SC. 924(c)" based on the unconstitutional residual clause predicate Count 1 offense, the assault resulting in serious bodily injury in violation of 18 U.S.C. § 113(a)(6). *Id.* at 2-5.

He continues: "The charge was duplicitous,"[7] relying on *In re Gomez*, 830 F.3d 1225, 1227 (11th Cir. 2016), where the court held a similar § 924(c) charge was "duplicitous" and finding, therefore, "a general verdict of guilty does not reveal any unanimous finding by the jury that the defendant was guilty of conspiring to carry a firearm during one of the potential predicate offenses, all of [the] predicate offenses, or guilty of conspiring during some and not others." Here, Antonio argues that "[b]ecause an assault resulting in injury under § 113(a)(6) qualifies as a 'crime of violence' only under the unconstitutional residual clause in § 924(c)(3)(B), the general § 924(c) verdict that may have rested on that predicate must be set aside." (21 at 3.) Antonio argues that "the error in authorizing a non-unanimous verdict for a non-existent offense requires reversal because there is grave doubt that the jury did not rely on the invalid predicate under § 113(a)(6)." (Movant's Supp. Brief (Doc. 21) at 6.) In other words, the Court cannot know that the jury relied on the predicate offense under § 113(a)(3), Count 2, for finding Antonio committed

---

[7]The Court considers the argument of "duplicity" in the context of an alternative argument to the assertion in the original motion that both predicate offenses were not crimes of violence. The Court does not believe that Antonio is raising a new duplicity claim on remand challenging the SSI, under *Davis*. *See* (Movant's Supp. Brief (Doc. 21) at 1-10.) This tactic would require the Court to construe Antonio's supplemental brief as a successive habeas application, and he would need a certificate of appealability from the Ninth Circuit to proceed. See 28 U.S.C. § 2255(h) ("A second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals.")

a crime of violence under the elements clause, § 924(c)(3)(A), to support the sentence imposed for the Count 3, § 924(c) conviction.

The Government responds that the habeas petition is procedurally barred and fails on the merits because the record is clear that the jury convicted Antonio of assault with a deadly weapon as the predicate offense for Count 3, the § 924(c) crime of violence offense. Antonio asks the Court to find the Government has waived the affirmative defense of procedural bar and, if not, procedural default is excused by cause and prejudice.

## LEGAL STANDARD

A prisoner in federal custody may move the court that imposed his sentence to vacate, set aside, or correct the conviction or sentence. 28 U.S.C. § 2255(a). Such relief is available only when the sentence was imposed in violation of the Constitution or laws of the United States, the court lacked jurisdiction, the sentence was greater than the maximum authorized by law, or it is otherwise subject to collateral attack. *United States v. Swisher*, 811 F.3d 299, 306 (9th Cir. 2016). "[A] district court must grant a hearing to determine the validity of a petition brought under that section, '[u]nless the motions and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" *United States v. Blaylock*, 20 F.3d 1458, 1465 (9th Cir. 1994) (quoting 28 U.S.C. § 2255(b)). Section 2255 does not, however, provide criminal defendants multiple opportunities to challenge their sentence, *United States v. Dunham*, 767 F.2d 1395, 1397 (9th Cir.1985), and if a criminal defendant could have raised a claim of error on direct appeal but failed to do so, he has procedurally defaulted that claim, unless he can demonstrate both "cause" excusing his procedural default and actual "prejudice" from the alleged error, *United States v. Frady*, 456 U.S. 152, 168 (1982), or that he is "actually innocent," *Bousley v. United States*, 523 U.S. 614, 622 (1998) (cleaned up).

Cause requires showing "that some objective factor external to the defense impeded counsel's efforts to comply with the … procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Prejudice requires "showing [ ] not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to [the defendant's] actual and substantial

disadvantage, infecting his entire trial with error of constitutional dimensions." *Frady*, 456 U.S. at 170.  "To establish actual innocence, [a defendant] must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley*, 523 U.S. at 623 (cleaned up).  "[A defendant] bears the burden of proof on this issue by a preponderance of the evidence, and he must show not just that the evidence against him was weak, but that it was so weak that no reasonable juror would have convicted him." *Lorentsen v. Hood*, 223 F.3d 950, 954 (9th Cir. 2000) (cleaned up).

It is undisputed that Antonio's habeas claim is procedurally defaulted because it was not raised on direct review. The Court must decide whether the Government waived its procedural default affirmative defense and, if not-- whether Antonio overcomes the procedural bar to raise new claims for the first time on collateral attack.

## DISCUSSION

### I.    Procedural Default

a.    <u>Waiver</u>

First, Antonio argues the Government has waived bringing this affirmative defense. Antonio asks the Court to reconsider an earlier determination that the Government's Response to his habeas motion was timely. He argues the Response was "twice-late," wherein the Government asserted the affirmative defenses of statute of limitations and procedural bar. (Movant's Supp. Brief (Doc. 21) at 10.) While the Court previously rejected this waiver argument and dismissed the habeas petition as untimely based on the statute of limitation, Antonio argues that in fairness now, the Court should find the response late and, therefore, the procedural bar defense untimely and waived.

On June 10, 2016, Antonio filed the Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255. (Doc. 1). In a service Order issued thirteen days later, the Court instructed the Government to file its answer within "60 days from the date of service" of Antonio's motion, (Doc. 3 at 2), around August 22, 2016. On August 15, 2016, the Government filed a motion to stay the case pending the Ninth Circuit's decision in *United States v. Begay*, Ninth Circuit No. 14-10080. (Doc. 4 at 1.) While the Government's

motion was pending, the deadline to file a response to Antonio's habeas motion lapsed. On November 10, 2016, the Court denied the motion to stay, (Order (Doc. 6)), and without addressing the lapsed deadline reset the due date for the response for another 20 days.

The Government filed the response on December 1, 2016, which was 21 days after the filing date of the Order and sought leave to file late. Antonio objected and argued, as he does now, that the affirmative defenses should be waived. The Court accepted Antonio's position that the Government had missed two deadlines to file the response but, nevertheless, granted the Government's motion to file it one day late. The Court found "that on balance, the factors weigh in favor of finding the latest response was timely because the one-day delay was minimal; the reason for delay was a miscalculation of the due date, and there is no evidence of bad faith; and there is no prejudice. (Order (Doc. 11) at 3.)

The Court will not reconsider its ruling regarding the timeliness of the Government's assertion of the procedural default defense. The Rules of Practice (Civil), Rule 7.2(g) provides:

> The Court will ordinarily deny a motion for reconsideration of an Order absent a showing of manifest error or a showing of new facts or legal authority that could not have been brought to its attention earlier with reasonable diligence. Any such motion shall point out with specificity the matters that the movant believes were overlooked or misapprehended by the Court, any new matters being brought to the Court's attention for the first time and the reasons they were not presented earlier, and any specific modifications being sought in the Court's Order. No motion for reconsideration of an Order may repeat any oral or written argument made by the movant in support of or in opposition to the motion that resulted in the Order. Failure to comply with this subsection may be grounds for denial of the motion.

*See also School Dist. No. 1J, Multnomah County, Or. v. ACandS, Inc.*, 5 F.3d 1255, 1262-1263 (9th Cir.1993) (suggesting Rule 60(b) provides for reconsideration to be used sparingly to prevent manifest injustice and only upon (1) mistake, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud; (4) a void judgment; (5) a satisfied or discharged judgment; or (6) extraordinary circumstances which would justify relief); (explaining reconsideration appropriate only in rare circumstances, such as where there is newly discovered evidence, clear error or the initial decision was manifestly unjust, or an

intervening change in controlling law). A motion for reconsideration should not be used to ask a court "to rethink what the court had already thought through, rightly or wrongly." *Above the Belt, Inc. v. Mel Bohannon Roofing, Inc*., 99 F.R.D. 99, 101 (E.D.Va.1983).

"No response to a motion for reconsideration and no reply to the response may be filed unless ordered by the Court, but no motion for reconsideration may be granted unless the Court provides an opportunity for response." LRCiv. 7.2(g)(2).

"Absent good cause shown, any motion for reconsideration shall be filed no later than fourteen (14) days after the date of the filing of the Order that is the subject of the motion." *Id.*

The request for reconsideration is untimely and lacks merit. Antonio rehashes arguments which were previously presented and failed to afford him relief. (Movant's Supp. Brief (Doc. 21) at 10-11.) The Court finds that its previous ruling on the Government's motion to accept late filing accurately elucidated the excusable neglect standard for late filings and correctly found in the Government's favor after weighing such factors as the absence of bad faith and the minimal delay to the proceeding.  (Order (Doc. 11) at 2-3.) Moreover, the Response (Doc. 7) was not filed late. The Court notes that Fed. R. Civ. P. 6(d) provides an additional 3 days after a specified time period would otherwise expire when service is made under Rule 5(b)(2)(C) (by mail), (D) (leaving with the clerk), or (F) (other means consented to by the parties). On November 10, 2016, when the Court's Order issued setting the 20-day deadline, Rule 6(d) included the 3-day extension for service under Rule (b)(2)(E) for service by electronic means. Fed. R. Civ. P. 6, Advisor Committee Notes, 2016 Amendment (effective date 12/1/2016). The Court does not reconsider its previous determination and affirms its finding that the Government did not waive the affirmative defense of procedural default.

Antonio agrees that a habeas claim is generally defaulted if not raised on direct appeal, any default is excused if the petitioner shows (1) cause and actual prejudice, or (2) actual innocence. *Bousley v. United States*, 523 U.S. 614, 622 (1998). He asserts he can

1  show cause and prejudice and preserves argument that his actual innocence overcomes

2  procedural default.[8]

3       b.    Cause

4       The law is clearly stated by the Government: "To show 'cause,' a defendant 'must

5  ordinarily . . . show that some factor external to the defense impeded counsel's efforts to

6  comply with the . . . procedural rule.'" (Govt Supp. Brief (Doc. 25) at 11 (quoting *Murray*

7  *v. Carrier*, 477 U.S. 478, 488 (1986); *see Manning v. Foster*, 224 F.3d 1129, 1133 (9th Cir.

8  2000)). "'[T]he mere fact that counsel failed to recognize the factual or legal basis for a

9  claim, or failed to raise the claim despite recognizing it, does not constitute cause for a

10  procedural default.'" *Id.* (quoting *Murray*, 477 U.S. at 486). And Antonio agrees that

11  "futility cannot constitute cause if it means simply that a claim was 'unacceptable to that

12  particular court at that particular time.'" (Supp Petition (21) at 11 (quoting *Bousley v.*

13  *United States*, 523 U.S. 614, 623 (1998))."

14       According to the Government, under Supreme Court precedent: "It has excused

15  procedural default on collateral review therefore only (1) where, in a state court proceeding,

16  the claim was 'novel,' *Reed v. Ross*, 468 U.S. 1, 16 (1984), (2) where the defendant

17  received ineffective assistance of counsel, *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000)

18  . . . , or (3) where the defendant is actually innocent, *McQuiggin v. Perkins*, 569 U.S. 383,

19  393 (2013) (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998)." *Id.* at 11-12.

20       Antonio asserts his claim is novel: "'[W]here a constitutional claim is so novel that

21  its legal basis is not reasonably available to counsel" during the previous proceedings,

22  cause for default exists.'" (Movant's Supp. Brief (Doc. 21) at 11.) *See Bousley,* 523 U.S.

23  at 622–23 (applying novelty exception in federal § 2255 cause of action).

24       Under *Reed*, a constitutional claim is not "reasonably available" if the Supreme

25  Court decision establishing that claim: (1) explicitly overruled one of the Supreme

26

27      [8] He acknowledges this claim is presently foreclosed by circuit precedent establishing that
even the slightest touching or threat with a dangerous weapon at least threatens injury,

28  which necessarily involves violent force. (Movant's Supp. Brief (Doc. 21) at 14 (citing
*United States v. Juvenile Female*, 566 F.3d 943, 947-48 (9th Cir. 2009); *United States v.*
*Grajeda*, 581 F.3d 1186, 1192 (9th Cir. 2009).

1   Court's precedents; (2) overturned a longstanding and widespread practice to which the

2   Supreme Court has not spoken but which a near-unanimous body of lower court

3   authority has expressly approved; or (3) disapproved a practice that the Supreme Court

4   arguably has sanctioned in prior cases, depending on how direct the Court's

5   sanction of the prevailing practice had been, how well entrenched the practice was in the

6   relevant jurisdiction at the time of defense counsel's failure to challenge it, and how

7   strong the available support is from sources opposing the prevailing practice." *Reed v.*

8   *Ross*, 468 U.S. at 17-18 (cleaned up). Antonio argues that all three *Reed* exceptions apply

9   here.

10          The Court agrees, as follows:

11          At the time of Antonio's direct appeal in 2010, no one could reasonably have
            anticipated *Johnson's* ruling in 2015, because no court had come close to

12          striking down the ACCA's residual clause and, moreover, because the
            Supreme Court had explicitly rejected Justice Scalia's *sua sponte* vagueness

13          challenge to that provision. *James v. United States*, 550 U.S. 192, 209-10
            (2007) ("we are not persuaded by Justice SCALIA's suggestion—which was

14          not pressed by *James* or his amici—that the residual provision is
            unconstitutionally vague"). The *James* decision in 2007 left no room to argue

15          in 2010 that the similar residual clause in § 924(c) was void for vagueness—
            until it was "explicitly overrule[d]" by *Johnson* in 2015. *Johnson*, 135 S. Ct.

16          at 2563 ("Our contrary holdings in *James* and *Sykes [v. United States*, 564
            U.S. 1, 16 (2011)] are overruled."). In other words, because the ACCA's

17          residual clause was unequivocally held not void in 2007, section 924(c)'s
            residual clause could not have been void in 2010. *See Davis*, 139 S. Ct. at

18          2326 (observing that "ACCA's residual clause required judges to use a form
            of what we've called the 'categorical approach'" and that "[f]or years, almost

19          everyone understood § 924(c)(3)(B) to require exactly the same categorical
            approach that this Court found problematic in the residual clauses of the

20          ACCA and § 16"). Antonio simply had no viable challenge to the residual
            clause in § 924(c) until *Johnson* in 2015.

21
            No circuit appears to have addressed the constitutionality of § 924(c)'s

22          residual clause prior to *Johnson* and *Davis*. However, every court of appeals
            had affirmed convictions and sentences based on § 924(c)'s residual clause

23          for decades in a prevailing practice sanctioned by the Supreme Court. Under
            the third *Reed* exception, the Supreme Court's sanction was direct: *Dimaya*

24          and *Davis*, which applied Johnson's rule to § 16(b) and § 924(c)(3)(B),
            respectively, prove that the fate of those residual clauses has always been tied

25          to that of the ACCA's residual clause. And the absence of decisions indicates
            that the practice of treating these comparable residual clauses as unassailable

26          on vagueness grounds was widespread. Nor is there any indication of support
            from other sources opposing that prevailing practice.

27
    (Movant's Supp. Brief (Doc. 21) at 12.) The Court agrees with Antonio; "[h]e has shown

28  cause to excuse any default." *Id.* at 13.

- 13 -

1
    c.    Prejudice

2
    The Court does not agree that Antonio can show prejudice, which requires he show

3
"actual and substantial disadvantage," *Frady*, 456 U.S. at 170, resulting from the errors of

4
which he complains, *id.* at 168. In other words: "Prejudice requires 'showing[ ] not merely

5
that the errors at his trial created a *possibility* of prejudice, but that they worked to [the

6
defendant's] *actual and substantial disadvantage,* infecting his entire trial with error of

7
constitutional dimensions.'" *See Supra.* at 8-9 (quoting *Frady*) (emphasis added). This

8
requires the Court to consider the merits of Antonio's habeas claim of error.

9
    Antonio argues that when a jury is instructed on multiple theories of guilt, one of

10
which is unconstitutional, harmless-error review applies. (Movant's Supp. Brief (Doc. 21)

11
at 5 (citing *Hedgpeth v. Pulido,* 555 U.S. 57, 62 (2008). "On collateral review, an error is

12
not harmless if it 'had [a] substantial and injurious effect or influence in determining the

13
jury's verdict.'" *Id.* (quoting *Brecht v. Abrahamson,* 507 U.S. 619, 637 (1993) (further

14
citations omitted).

15
    To show the error substantially influenced the verdict, Antonio relies on a Fifth

16
Circuit case, *United States v. Jones*, 935 F.3d 266, 273-74 (5th Cir. Aug. 12, 2019), where

17
the court there found reversible, plain error,[9] when the trial court permitted a jury to convict

18
for several § 924 offenses, which were each based on predicates of "both a RICO

19
conspiracy (no longer a 'crime of violence' after *Davis*) and a drug trafficking crime,

20
without requiring the jury to specify which predicate it relied upon." (Movant's Supp.

21
Brief (Doc. 21) at 7.) There was plain error affecting the defendant's substantial rights

22
because it was "reasonably probable that the jury would not have convicted for § 924(c) if

23
the 'invalid crime of violence predicate' had not been included." *Id.* (quoting *Jones,* 935

24
F.3d at 274).

25
    The court in *Jones* looked at the facts and argument presented to the jury and

26
concluded the two predicates were not coextensive," i.e., one did not encompass a broader

27

28
---
[9] A finding of plain error is insufficient to warrant collateral habeas review, the standard actual and substantial disadvantage standard under *Frady* is a "significantly higher standard than plain error. *Frady,* 456 U.S. at 166.

range of conduct than the other. *Id*. (citing *Jones,* 935 F.3d at 274).

Antonio asserts that the trial included evidence that may have led jurors to conclude there were other instances of assault with a deadly weapon that were not coextensive with the assault on November 12, 2006, which was the shooting that was the subject of substantive Counts 1 and 2. Antonio argues this leaves only the invalid predict offense under § 113(a)(6) as support for the Count 3, crime of violence conviction. The Government cannot rely on the substantive Count 1 conviction because assault resulting in serious bodily injury in violation of 18 U.S.C. § 113(a)(6), cannot be a predicate offense supporting a crime of violence conviction under § 924(c).

Antonio asserts that jurors were presented with several different bases upon which they may have concluded that different conduct, other than the shooting that occurred on November 12, 2006, supported the respective predicate assaults described in the § 924(c) instruction. Under such circumstances, the Court cannot say the jury unanimously convicted him for a crime of violence based on the Count 2 § 113(a)(3) predicate offense.

He points to two different times in the government's opening statement when the prosecutor told the jury that Antonio's wife, Phyllisa, would testify that "he would stick the machine gun every other day into her mouth, and threaten her with this machine gun," (Movant's Supp. Brief (Doc. 21) at 7). He argues these opening statements in combination with her testimony that she saw that machine gun "[t]oo many times," "almost . . . daily," may have led some jurors to conclude that "conduct other than the charged shooting on November 12, 2006, of his wife's cousin, Kay, comprised the assault with a deadly weapon offense referenced in the § 924(c) instruction. Antonio also relies on testimony from his wife that "Antonio later again threatened to kill her with a deadly weapon in a letter mailed from jail before trial." *Id.* at 8.

Antonio points to testimony from the victim, his wife's cousin, Kay, about Antonio's conduct before the shooting and her resulting apprehension. She testified to facts regarding Antonio's presence outside her house and his conduct, including yelling at his wife, who was inside, that reflected she was she scared and apprehensive that something

terrible was about to happen because she knew Antonio and his capacity for violence. "Then, she walked to the DCD player and was shot." *Id.* at 8-9. Antonio argues that Kay's testimony related to conduct before the shooting may have led the jury to conclude she apprehended harm from a dangerous weapon and to conclude this to be a predicate offense under § 113(3). It would have been a conviction based only on the invalid predicate under § 113(a)(6). *Id.* at 9.

According to Antonio, the Court cannot look for clarification from the jury instruction for the Count 2 substantive charge of assault with a dangerous weapon under § 113(a)(3), which restricted that charge to the shooting. Although it required jurors to find that Antonio "shot" and "used a firearm," the instruction for the § 924(c) crime of violence offense, Count 3, did not cross-reference to the Count 2 instruction. Instead, the jury was referred to "the crime of . . . assault with a dangerous weapon as charged in Count Two of the Indictment." Antonio says that Count 2 of the SSI "alleged broadly that Antonio 'did . . . assault'—not shoot—the victim 'with a dangerous weapon, that is, 9mm Sten machine gun." (Movant's Supp. Brief (Doc. 21) at 9.)  "It did not restrict the charge to the [November 12, 2006] shooting." *Id.* The jury instructions did not preclude jurors from concluding that the various pre-shooting acts satisfied the reference to an "assault" with a dangerous weapon in both the § 924(c) jury instruction and Count 2 of the SSI. *Id.* at 9-10.

Antonio argues, therefore, the guilty verdict on Count 2, the substantive offense of assault with a dangerous weapon under § 113(a)(3), does not show that the jury would have convicted Antonio of Count 3 for violating § 924(c), the crime of violence offense even if the § 113(a)(6) charge had been omitted as a predicate. Antonio asserts that the "harmlessness of the error is thus in grave doubt because the conviction and 30-year consecutive sentence under § 924(c) may have been based on a non-unanimous verdict for a non-existent offense." *Id.* at 10 (citing *United States v. Savoires*, 430 F.3d 376, 380-81 (6th Cir. 2005) (finding reversible plain error where jury instructions on a duplicitous § 924(c) charge gave the jury two options for guilt, without requiring unanimity, because one option "authoriz[ed] a conviction for a non-existent offense"). As *Davis* and *Borton*

1  instruct, the § 924(c) conviction could not be based on the Count 1 substantive conviction

2  because 18 U.S.C. § 113(a)(6) violations, assault resulting in serious bodily injury can be

3  committed with the *mens rea* of recklessness and, therefore, is not a predicate offense crime

4  of violence.

5      The Court is not persuaded by Antonio's tortured arguments that the two predicates

6  here were not coextensive. Like the court did in *Jones,*[10] this Court looks at the facts and

7  arguments presented to the jury and concludes the two predicates were coextensive. This

8  is case is not a case like *In re Gomez,* 830 F.3d 1225, 1227 (11th Cir. 2016), relied on by

9  Antonio where there existed a span of time over which several potential predicate offenses

10  occurred which left the court guessing as to which predicate the jury relied on for the 924(c)

11  conviction. While not precedential, the Court finds the logic persuasive in the unpublished

12  decision *United States v. Espudo,* 768 F.App'x 623 (9th Cir. 2019). In *Espudo,* the court

13  considered a 924(c) count that alleged two predicate offenses: a RICO conspiracy (no

14  longer a 'crime of violence' after *Davis*) and conspiracy to distribute controlled substances.

15  The defendants made the same argument of duplicity made by Antonio. The court

16  explained there was no issue of duplicity because "the defendants were each charged with

17  violating 924(c) for brandishing or discharging a firearm on only one occasion. The

18  defendants just happened to commit two separate predicate offenses while brandishing or

19  discharging that firearm—a RICO conspiracy that was inextricably intertwined with a

20  conspiracy to distribute controlled substances." *Id.* at 626.

21      The Court relies on the trial record, which it recalls was as summarized in the

22  Government's Supplemental Brief:

23      The events in question occurred at a house in the town of Sells, on the Tohono
       O'odham Indian Reservation in Arizona. (RT 5/13/08 24, 29.) This was the
24      home of Karenina Ignacio (referred to in testimony as "Kay"), who was
       cousin to Phyllisa Antonio ("Phyllisa"). (RT 5/14/08 34-35.)

25
       Phyllisa married the petitioner, James Antonio, on October 20, 2006. (RT
26      5/13/08 113.) After they were married, Antonio frequently showed her an
       oddly-shaped "automatic" gun, with a clip that projected out from the side,
27      which he kept in a black backpack. (RT 5/13/08 131-32, 136-37.) At trial,

28  ─────────────────
[10] While the Court may not consider Count 1 a predicate offense after *Borden*, the Court
looks to the facts of the case when assessing prejudice from the alleged error.

1    she identified a picture of Antonio holding the gun and wearing a bandanna
2    over his face (Ex. 11), something she had seen "almost every day." (RT
     5/13/08 141-42.)

3    The marriage quickly soured. On the night of November 11, 2006, Phyllisa
4    stayed in her grandmother's house, diagonally across the street from Kay's
     home, and she had no idea where Antonio was. (RT 5/13/08 114-15; RT
5    5/14/08 35.) On the morning of Case November 12, Antonio telephoned
     Phyllisa, abusively accused her of having gone out with other men, and told
6    her that he would be coming over. Although Phyllisa informed Antonio that
     she was going across to Kay's house, he warned her that she had better be at
7    the grandmother's house when he arrived. (RT 5/13/08 118-19.) Phyllisa
     nonetheless went to Kay's house, with her 2-year old daughter Princess and
8    a woman named Tara. (RT 5/13/08 113, 119.)

9    While Phyllisa and Tara were sitting in Kay's house, another friend named
     Sonia arrived with her toddler son Patrick, and Antonio came in the door
10   right behind Sonia. (RT 5/13/08 119-20; SER 24-25.) He demanded that
     Phyllisa come outside, and went out to wait for her, but she was afraid to go
11   because she "knew what he was going to do." (RT 5/13/08 120-21; SER 25-
     26.) At Phyllisa's request, Kay closed and locked the door. (RT 5/13/08 113;
12   SER 20.) Antonio then began knocking at the door, and walking up and down
     between the door and a window. (RT 5/13/08 121; SER 26.) The children
13   thought it was a game, and were knocking back on the inside of the door.
     (RT 5/14/08 44-45, 99-100; SER 55-56, 89-90.) As Antonio continued
14   yelling at Phyllisa to come out, she told him that she would not. (RT 5/14/08
     12-13; SER 44-45.)

15   Phyllisa, Tara, and Sonia were all seated on couches in the living room, but
16   Kay was standing up and moving back and forth, tending to food that she
     was preparing in the kitchen. (RT 5/14/08 13-14, 41.) Kay and Sonia testified
17   that Antonio looked into the window, putting his face right up to it with his
     hands cupped around his face for shade; he peered in for about half a minute,
18   and he and Kay looked at each other, before he turned away. (RT 5/14/08 41-
     42, 55-58, 106-07.)

19   Kay was standing no more than 3 feet from the window, to eject a DVD from
20   the television, when she noticed Antonio out of the corner of her eye, about
     halfway between the house and the sidewalk. (RT 5/14/08 20-23, 43-44, 52,
21   61-62.) Then a spray of bullets came through the window, one of which
     struck Kay in the lower back. (RT 5/14/08 43- 44.) The women huddled
22   together in the hallway for protection and called the police. (RT 5/14/08 45-
     46.) By the time the police arrived, Antonio was gone, driven away by a
23   friend who claimed to have seen and heard nothing -- but who dropped
     Antonio off in a desert area. (RT 5/14/08 83-90; SER 81-88.)

24   (Govt Supp. Brief (Doc. 25) at 3-5.)

25        Trial evidence included stipulated testimony from Kay's treating physician that she

26   was struck in the back by a bullet which came to rest in her liver, that it was too dangerous

27   to remove it, and that she had suffered a serious bodily injury. *Id.* at 5 (citations omitted).

28   Ballistic evidence connected Antonio's machine gun to the shooting, including: seven

- 18 -

bullet holes in the window and  corresponding damage to the wall and ceiling inside the house, except for the bullet that remained in Kay's liver; a cluster of seven shell casings collected from the middle of the yard; when Antonio was arrested a few days later in Tucson, he was carrying his black backpack, with the weapon (a Sten Mark 3 machine gun) and a magazine filled with 9 mm. ammunition inside it. Ballistic analysis showed that the casings from Kay's front yard had been fired from that weapon, and it was stipulated that both the machine gun (which was not registered) and the 27 rounds of ammunition had traveled in interstate or foreign commerce. *Id.* at 5-6 (citations omitted).

The Court agrees with the Government: "Under the facts of this case, there was only one burst of shooting from the machinegun, which resulted in two assault charges: assault causing serious bodily injury and assault with a dangerous weapon." (Govt Supp. Brief (Doc. 25) at 17.) At the trial, "both the prosecutor and defense counsel restricted their arguments to whether the shooting satisfied the elements of the assault statute; (RT 3/15/08 9-16, 19-23.) The jury instructions for both substantive assault counts required the jury to find that Antonio intentionally shot the victim. (CR 71, pp. 14, 16.) . . . For the § 924(c) count, the jury was instructed that they had to find that Antonio "committed the crime of assault resulting in serious bodily injury as charged in count one of the indictment or assault with a dangerous weapon as charged in count two." (CR 71, p. 17.) . . . Moreover, for the assault with the deadly weapon count, the jury instructions required the jury to find that Antonio used a firearm. (CR 71, p. 16.)" *Id.*

Under the facts of the case, the jury instructions and verdicts of guilt on both substantive assault charges establish that the jury unanimously found Antonio used a machine gun during and in relation to a crime of violence-- assault with a dangerous weapon in violation of 18 U.S.C. § 113(a)(3) (Count 2). The jury also found the assault with the machine gun, i.e., the dangerous weapon, resulted in serious bodily injury to the victim but if they had not convicted on Count 1, the Court is confident that the verdict would have been the same for Count 3 based on the Count 2 conviction. The Count 1 and Count 2 assault offenses were intertwined and coextensive. The jury conclusively found he

committed an assault using a machine gun in both counts, necessarily, resulting in a finding that he committed an assault with a dangerous weapon. On this basis, the Court finds without a doubt, that Antonio would have been convicted on Count 3, even with the elimination of the Count 1, 18 U.S.C. § 113(a)(6), predicate offense.

The burden is on Antonio to show that errors at his trial created more than a mere possibility of prejudice; he must show the alleged error worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions. *Frady*, 456 U.S. at 170. His theories of prejudice are no more than mere speculations and do not establish prejudice.

The Court does not address application of *United States v. Dominguez*, 954 F.3d 1251 (9th Cir. 2020), relying on *United States v. Gobert*, 943 F.3d 878 (9th Cir. 2019), which held: "'[w]here two counts served as predicate offenses for a § 924(c) conviction, the conviction is lawful so long as either offense qualifies as a crime of violence.'" (Govt's Resp to Notice of Supplemental Authority (Doc. 39) at 1-2 (quoting *Dominguez*, 954 F.3d at 1259 (citing *Gobert*, 943 F.3d at 880 n. 2.)) Antonio argues that this statement in *Dominguez* is merely a case-specific conclusion of harmlessness on the facts, or it would otherwise create a circuit split and be contrary to the Supreme Court's rule that when a jury was instructed on multiple theories of guilt, one of which is unconstitutional, harmless-error review applies. (Reply (Doc. 35) at 2 (citing *Hedgpeth v. Pulido*, 555 U.S. 57, 62 (2008)).

The Court finds that the alleged trial errors are speculative at best. Antonio has not shown any actual or substantial disadvantage from the inclusion of Count 1, 18 U.S.C. 113(a)(6), as a predicate offense to support Count 3. Given the charges, the evidence, and the jury instructions and verdicts, Antonio cannot show prejudice from the alleged error because the assault conduct was intertwined between Counts 1 and 2. The Court has conducted a case-specific harmless error assessment and finds that in this case the predicate offense, 18 U.S.C. § 113(a)(3), for the 924(c) conviction is lawful under the element clause

1    of the definition for a crime of violence, therefore, any error from including the 18 U.S.C.

2    § 113(a)(6) violation as a predicate offense is harmless.[11]

3            Because Antonio fails to show prejudice, there is no exception for this Court to

4    exercise jurisdiction over Antonio's procedurally defaulted habeas claim. The Court does

5    not reach the merits of the claim, but of course the reasoning of the Court regarding the

6    lack of prejudice means the habeas claim would fail on the merits. It may equally fail on

7    the merits under *Dominguez* and *Gobert.* The facts in *Gobert* were nearly identical to the

8    one at hand, and the Ninth Circuit ruled that assault with a dangerous weapon constitutes

9    a "crime of violence" under the elements clause of 18 U.S.C. § 924(c), and that for a §

10   924(c) conviction to be unconstitutional, both predicate assault offenses would need to be

11   invalidated. Therefore, the jury's verdict would still stand because the jury unanimously

12   found Antonio guilty of the valid predicate offense of assault with a dangerous weapon.

13           Antonio's § 2255 motion fails because it is procedurally defaulted. It likewise fails

14   on the merits. The habeas motion is denied. The Court reaffirms the 30-year consecutive

15   sentence imposed on Count 3 for the § 924(c) violation.

16           **Accordingly,**

17           **IT IS ORDERED** that the Motion to Vacate, Set Aside, or Correct Sentence Under

18   28 U.S.C. § 2255 (Doc. 1) is DENIED.

19           **IT IS FURTHER ORDERED** that a certificate of appealability shall issue because

20   of the shifting legal landscape involving crimes of violence pursuant to § 924(c) and

21   because the Court's assessment of the constitutional claim resulted in a finding that

22   Antonio could not show prejudice from the alleged constitutional error and the claim is

23   procedurally barred. The Court finds reasonable jurists could debate whether the petition

24   /////

25   /////

26   /////

27

28   ---
[11] The Court finds *United States v. Dominguez,* 2022 WL 4138730 (9th Cir. Sept. 13, 2022) and *United States v. Reed,* 2022 WL 4231210 (9th Cir. Sept. 14, 2022) consistent with the approach taken by the Court in this disposition of Antonio's habeas petition.

- 21 -

states a valid claim of the denial of a constitutional right and whether the district court was correct in its procedural ruling. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment accordingly and close this case.

Dated this 16th day of September, 2022.

Honorable Cindy K. Jorgenson
United States District Judge